# Exhibit 1

STATE OF NEW YORK
SUPREME COURT | COUNTY OF ERIE

BRIAN T. BORDERS

                              Plaintiff,                SUMMONS

v.

GOODYEAR DUNLOP, NA., SUMITOMO
RUBBER,                                     Index No.  810624/2017

                            Defendant.

To the above-named defendant:

**GOODYEAR DUNLOP, NA., SUMITOMO RUBBER,**
10 Sheridan Drive, Tonawanda, New York, 14051

You are hereby summoned and required to serve upon plaintiff's attorney an answer to the complaint in this action within twenty days after the service of this summons, exclusive of the day of service, or within thirty days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

The venue designated is Erie County as it is the county of residence of the Plaintiff, which is 26 Prestonwood Lane, East Amherst, NY 14051.

The venue is also designated as Erie County as the as the acts and omissions giving rise to this claim occurred in the Erie County, New York

Dated:        August 3, 2017

Respectfully Submitted,
Plaintiff, Brian T. Borders
By His Attorney

    s/ *Lindy Korn*
LINDY KORN, ESQ.
Law Office of Lindy Korn
*Attorney for Brian Borders*
Electric Tower
535 Washington Street
Ninth Floor
Buffalo, New York 14203
716-856-5676
716-507-8475 (*facsimile*)
E-Mail: lkorn@lkorn-law.com

STATE OF NEW YORK
SUPREME COURT | COUNTY OF ERIE

BRIAN T. BORDERS

                                  **Plaintiff,**

v.

                                  Index No.

GOODYEAR DUNLOP, NA., SUMITOMO RUBBER,

                                  810624/2017

                                  **Defendant.**

## COMPLAINT

Plaintiff, Brian T. Borders, alleges as follows:

### THE PARTIES

1.    The Plaintiff, Brian Borders, is a natural person, a male, over forty (40) years of age, and suffers from a disability cognizable under New York Human Rights Law and the Americans With Disabilities Act.

2.    The Plaintiff resides in Erie County, New York with a place of residence in East Amherst, Erie County, New York.

3.    The Defendant, Goodyear Dunlop NA, Sumitomo Rubber., is a foreign corporation with its principal offices at 3-6-9 Wakinohama-cho, Chuo-ku, Kobe, Hyogo 651-0072, Japan. The Defendant maintains offices for production and transacting business at 10 Sheridan Drive, Tonawanda, New York, 14051.

### JURISDICTION AND VENUE

4.    The Court has jurisdiction over this action pursuant to New York Executive Law Article 15, Section 297(9) and 29 U.S.C. § 2617 (a)(2).

5.    Venue is properly laid in the State Supreme Court, Erie County New York pursuant to CPLR § 503(a) as the Plaintiff is a resident of Erie Count and CPLR 503(c) as the Defendant

1

corporation has its main offices in Erie county and a substantial part of the acts or omissions giving rise to the claim occurred in the Erie County, New York.

## TIMELINESS

6. When filing a claim of discrimination under New York Human Rights Law the Plaintiff has three years to bring a claim. Article 15, New York Human Rights Law § 297(9), CPLR 214(2).

7. Herein the Plaintiff alleges that the most recent discriminatory act occurred on December 30, 2016. This gives a latest date to file a claim with the New York State Supreme Court of December 29, 2019.

## FACTUAL BACKGROUND

8. Plaintiff began working for the Defendant in April of 2007. His position was an on-site contract Unix Systems Administrator from Systems Personnel.

9. The Plaintiff has had excellent performance record. This began to change in approximately 2013-2014.

10. The Plaintiff has no disciplinary issues.

**Background**

11. Plaintiff is a cancer survivor. This occurred during the Plaintiff's time in the US Army. He was honorably discharged from the US Army and has a Veteran's Administration disability rating of eighty percent (80%), 50% for Migraine headaches and 30% for Cancer related issues.

12. Afterwards the Plaintiff had ongoing issues with migraine headaches and was prescribe oxycodone. These could be severe and during his time with the Defendant Mr. Borders would have attacks that required him to adjust his schedule or to be out for a day or two.

2

13. This was all made clear during the Plaintiff's interview with the Defendant in 2007 before he was contracted to administer the Defendant's Unix Systems. The position was an hourly contract position as a UNIX Systems Administrator. The Contract included ten (10) days of vacation, but not paid sick time.

14. During the year 2007 Plaintiff began working for Defendant. His supervisor was Mark Paeplow. Plaintiff received positive evaluations form Mr. Paeplow. In addition Mr. Paeplow allowed the Plaintiff Flex Time to accommodate his migraine attacks. For example, Mr. Borders was allowed to come in later in the day and work late into the evening to accomplish his tasks. Mr. Paeplow also allowed Plaintiff the banking of extra time to back fill for sick time.

15. In October – November 2013 a new supervisor took over, Mr. Kirk Rawls.

16. Mr. Rawls found fault with Plaintiff from the outset. Mr. Rawls did not allow flex time or overtime. This refusal of overtime resulted in confrontations. In July 2014 the Plaintiff was engaged in work installing what were known as Solaris Patches. Plaintiff informed Mr. Rawls this task would take time. Mr. Rawls then called the Plaintiff into the office, told the Plaintiff that the job at hand did not take as long as Plaintiff thought but would approve overtime on this occasion.

17. Plaintiff avers that Mr. Rawls had no basis for his unilateral declaration of how much the Solaris job should take.

**Actionable Events**

18. Fearing a future in which he would be denied an accommodation for his medical conditions Plaintiff met with Defendant's Human Resources person, Plaintiff called Linda M. Walleshauser and asked to meet. The meeting was arranged during the week of August 4, 2017. During this meeting with Ms. Walleshauser the Plaintiff discussed Kirk Rawls and Mr. Rawls persecution of the Plaintiff about being out sick with migraines. Plaintiff explained that he was working through migraines and as a result was not able to perform to his best. Plaintiff also asked

3

about requesting time off under the Family Medical Leave Act (FMLA) and was told it was not necessary to file for FMLA.

19. On August 15, 2014 Plaintiff received his mid-year review from Mr. Rawls. Mr. Rawls noted the Plaintiff's medical issues and his time off. Mr. Rawls reduced Plaintiff to thirty (30) hours a week.

20. On May 4, 2015 Plaintiff received his mid-year review from Mr. Rawls. Mr. Rawls noted the Plaintiff's medical issues and his time off.

21. On August 28, 2015 Mr. Rawls noted an issue with work times not being equal. Plaintiff noted that Mr. Rawls was taking an hour for his lunch while Plaintiff was only allowed thirty (30) minutes.

22. On 28 October 2015 Mr. Rawls put the Plaintiff back to 40 hours to work on something known as the AS/400 upgrade project

23. In March 2016 Mr. Rawls called the Plaintiff to a meeting and told the Plaintiff his work hours were not matching up. Plaintiff averred he started at 0800 and left at 1630 with one half hour for lunch. Mr. Rawls stated to the Plaintiff that his hours were to come in at 0800 and leave at 1700 and to take a full hour for lunch.

24. On 25 April 2016 Kirk Rawls rejected three (3) hours of overtime for the Plaintiff because the Plaintiff did not ask for prior approval. The Plaintiff was working with a co-worker, Mr. John Cook, to fix an ongoing issue with VMware systems crashing overnight. The fix was to change the Network Interface adapter on Linux systems and this took more than eight hours. Prior to this issue with VMWare systems crashing, the Plaintiff had been instructed by Mr. Rawls to ask permission to ask for overtime. On other issues requiring overtime up to this point the Plaintiff had others call on his behalf to ask for off hours overtime. After several such calls Mr. Rawls had changed his mind and told Plaintiff, "If something is broken just fix it." Plaintiff followed that

4

directive. However, when the issue of overtime for the VMware system issues came up, it was denied on the basis Plaintiff had not asked for it.

25. In May 2016 Mr. Rawls posted as UNIX, Linux Administrator. As posted the Plaintiff, The Plaintiff had been doing these tasks and this experience would have allowed him to apply for the position. However, the position, as posted, now included the requirement of having a Bachelor of Science Degree. Mr. Rawls knew the Plaintiff did not have such a degree. Thus Plaintiff was precluded from applying for this position.

26. In July 2016 the Defendant hired a new person for UNIX Linux Administrator.

27. In September 2016 Mr. Rawls told Plaintiff he needed to improve or his contract would not be renewed.

28. On 25 October 2016 Mr. Rawls canceled the Plaintiff's contract saying there were to be no contractors for 2017. Mr. Rawls did tell the Plaintiff he could work until the end of year if he would train his replacement.

29. The Plaintiff did ask about applying to work for the Defendant as a direct hire. Mr. Rawls responded that he had informed the Plaintiff to apply for the position of Linux/UNIX Systems Administrator. Plaintiff claims this never happened. In any event, as posted, the Plaintiff was not qualified for the position of Linux/UNIX Systems Administrator.

30. In December 2016 Mr. Rawls informed the Plaintiff of a posting of a position for Desktop support and the Plaintiff could apply. The pay was fifty to fifty-five thousand dollars annually. Plaintiff did apply and had and interview set for 3 January 2017. This interview never happened.

31. On 29 December 2016 Mr. Rawls accused Plaintiff of causing problems leading to a system failure with and application something known as the InterPage system. Plaintiff had worked

5

on the system in 2015 doing an upgrade. After that management of the system went to another individual, John Cook.

32. Despite the fact the Plaintiff had anything to do with the InterPage system for over a year, Mr. Rawls demanded to know why he should bring the Plaintiff back. At this point Plaintiff asked to cancel the interview for Desktop support.

33. Mr. Rawls then went to the Human Resources office, whose personnel were not in yet. He then locked the Windows login and had Plaintiff log out.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

34. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as though fully restated herein.

35. Plaintiff had specifically noted his medical conditions at the time of hire and was originally accommodated with overtime when needed, flex time, and that ability to take unpaid days off when needed – as long as any tasks or assignments were otherwise completed on time.

36. Mr. Rawls unilaterally ended the taking off of unpaid days.

37. Plaintiff did raise this issue with Mr. Rawls and with Ms. Linda M Walleshauser. Plaintiff specifically noted that he was being persecuted by Mr. Rawls for having migraine headaches. Plaintiff specially asked about requesting leave under the Family Medical Leave Act and was told by Ms. Wallhauser that he did not have to file for FMLA.

38. Subsequently Mr. Rawls made negative comments in the Plaintiff's 15 August 2014 performance review, 4 May 2015 performance review about the Plaintiff taking off sick days.

39. Thus the Plaintiff was denied access to FMLA leave and was held accountable for days off that would otherwise have been covered.

40. The days taken off were without pay but were counted against the Plaintiff in his performance reviews and therefor contributed to the employer not renewing the Plaintiff's contract or hiring Plaintiff or a position within the employer's organization.

41. The Defendant was on notice that the Plaintiff wanted to make use of the provision of the Family Medical Leave Act (FMLA), the Defendant averred the Plaintiff should not file an FMLA request. Thereafter the Defendant counted days that Plaintiff took off due to his disability, and that could have been covered by FMLA, against the Plaintiff. Thus the actions of the Defendant are willful in that the Defendant knowingly denied the Plaintiff any leave under FMLA.

## SECOND CAUSE OF ACTION
## UNLAWFUL DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW

42. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as though fully restated herein.

43. From the time he took over as the supervisor for the Plaintiff in late 2013, Mr. Rawls has made and issue of the Plaintiff's medical conditions. Mr. Rawls unilaterally ended any overtime for the Plaintiff as well as Flex time. These were both accommodations that had been in place under the previous supervisor Mr. Paeplow.

44. Plaintiff had specifically noted his medical conditions at the time of hire and was originally accommodated with overtime when needed, flex time, and that ability to take unpaid days off when needed – as long as any tasks or assignments were otherwise completed on time.

45. Mr. Rawls unilaterally ended the overtime and flex time for the Plaintiff.

46. Thereafter Mr. Rawls constantly persecuted the Plaintiff for being out sick with Migraines.

47. Mr. Rawls would constantly tell the Plaintiff that he had attendance and medical issue and should look for part time work.

7

48. Mr. Rawls constantly made threats of firing the Plaintiff allegedly over performance problems.

49. In August 2014 the Plaintiff did raise this issue with Mr. Rawls and with Ms. Linda M Walleshauser, the Defendant's Human Resources person. Plaintiff specifically noted that he was being persecuted by Mr. Rawls for having migraine headaches.

50. Ms. Walleshauser took no actions with regard to the Plaintiffs complains of being persecuted based on his disability,

51. Subsequently Mr. Rawls made negative comments regarding the Plaintiff taking off sick days in the Plaintiff's 15 August 2014 performance review and the Plaintiff's 4 May 2015 performance review.

52. Thus the Plaintiff was held accountable for days off that were previously allowed as an accommodation for his disability.

53. The days taken off were without pay but were counted against the Plaintiff in his performance reviews and therefor contributed to the employer not renewing the Plaintiff's contract or hiring Plaintiff or a position within the employer's organization.

54. Thus the employer had provided an accommodation, then withdrew it without justification, thus denying the Plaintiff his reasonable accommodation.

55. The days taken off were without pay but were counted against the Plaintiff in his performance reviews and therefor contributed to the employer not renewing the Plaintiff's contract or hiring Plaintiff or a position within the employer's organization.

### THIRD CAUSE OF ACTION
### UNLAWFUL FAILURE TO ACCOMMODATE IN VIOLATION OF
### NEW YORK STATE HUMAN RIGHTS LAW

56. From the time he took over as the supervisor for the Plaintiff in late 2013, Mr. Rawls has made and issue of the Plaintiff's medical conditions. Mr. Rawls unilaterally ended any overtime

8

for the Plaintiff as well as Flex time. These were both accommodations that had been in place under the previous supervisor Mr. Paeplow.

57. Plaintiff had specifically noted his medical conditions at the time of hire and was originally accommodated with overtime when needed, flex time, and that ability to take unpaid days off when needed – as long as any tasks or assignments were otherwise completed on time.

58. Mr. Rawls unilaterally ended the overtime and flex time for the Plaintiff.

59. Thereafter Mr. Rawls constantly persecuted the Plaintiff for being out sick with Migraines.

60. Mr. Rawls would constantly tell the Plaintiff that he had attendance and medical issue and should look for part time work.

61. Mr. Rawls constantly made threats of firing the Plaintiff allegedly over performance problems.

62. In August 2014 the Plaintiff did raise this issue with Mr. Rawls and with Ms. Walleshauser. Plaintiff specifically noted that he was being persecuted by Mr. Rawls for having migraine headaches.

63. Ms. Walleshauser took no actions with regard to the Plaintiffs complains of being persecuted based on his disability,

64. Subsequently Mr. Rawls made negative comments regarding the Plaintiff taking off sick days in the Plaintiff's 15 August 2014 performance review and the Plaintiff's 4 May 2015 performance review.

65. Thus the Plaintiff was held accountable for days off that were previously allowed as an accommodation for his disability.

9

66. The days taken off were without pay but were counted against the Plaintiff in his performance reviews and therefor contributed to the employer not renewing the Plaintiff's contract or hiring Plaintiff or a position within the employer's organization.

67. Thus the employer had provided an accommodation, then withdrew it without justification, thus denying the Plaintiff his reasonable accommodation.

68. The days taken off were without pay but were counted against the Plaintiff in his performance reviews and therefor contributed to the employer not renewing the Plaintiff's contract or hiring Plaintiff or a position within the employer's organization.

**FOURTH CAUSE OF ACTION
UNLAWFUL RETALIATION IN VIOLATION OF
NEW YORK STATE HUMAN RIGHTS LAW**

69. Plaintiff had specifically noted his medical conditions at the time of hire and was originally accommodated with overtime when needed, flex time, and that ability to take unpaid days off when needed -- as long as any tasks or assignments were otherwise completed on time.

70. Mr. Rawls unilaterally ended the taking off of unpaid days.

71. Plaintiff did raise this issue with Mr. Rawls and with Ms. Walleshauser. Plaintiff specifically noted that he was being persecuted by Mr. Rawls for having migraine headaches. Plaintiff specially asked about requesting leave under the Family Medical Leave Act and was told by Ms. Walleshauser that he did not have to file for FMLA.

72. Ms. Wallhauser took no actions with regard to the Plaintiffs complains of being persecuted based on his disability,

73. Subsequently, to the date that Plaintiff actually departed from the Defendant, Mr. Rawls made negative comments. These included negative comments in the Plaintiff's 15 August 2014 performance review, 4 May 2015 performance review about the Plaintiff taking off sick days.

74. Thereafter Mr. Rawls continued making negative comments to the Plaintiff with regard to the Plaintiff for being out sick with Migraines.

75. Mr. Rawls would continue to tell the Plaintiff that he, the Plaintiff, had attendance and medical issues and should look for part time work.

76. Mr. Rawls constantly made threats of firing the Plaintiff allegedly over performance problems, which either did not exist or were the province of someone else.

77. The days taken off were without pay but were counted against the Plaintiff in his performance reviews and therefor contributed to the employer not renewing the Plaintiff's contract or hiring Plaintiff or a position within the employer's organization.

78. However, Plaintiff was told he could remain long enough to train his replacement.

79. These action were clearly taken and continued after the Plaintiff made his request for FMLA and made complaints about Mr. Rawls persecuting him because of his disabilities.

80. These actions are materially adverse as they are such as to dissuade someone of reasonable firmness from making or supporting a complaint of discrimination.

**WHEREFORE**, Plaintiff respectfully requests from this Court the following relief:

A. A judgment that the defendant violated the Plaintiff's rights under the new York Human Rights Law;

B. A judgment that the defendant violated the Plaintiff's rights under the Family Medical Leave Act (FMLA);

C. Awarding the Plaintiff damages for his reduction in hours for having a disability in an amount to be determined at trial;

D. Awarding damages for the Plaintiff's pain, suffering, loss of enjoyment of life, humiliation and other injuries in the amount of $300,000.00;

11

E. Defendant to pay all medical costs incurred by Plaintiff as a result of the stress and anxiety resulting from the discrimination he suffered and the failure to accommodate his disabilities, including any and all diagnostic analysis, treatment and therapy, and follow up therapy.

F. Defendant to pay Plaintiff the costs and disbursements of this action, together with reasonable attorneys' fees;

G. Plaintiff to have such other and further relief as this Court deems just and equitable.

Dated: August 3, 2017

Respectfully Submitted,
Plaintiff
_____
Brian T. Borders
26 Prestonwood Lane
East Amherst, NY 14051

12

## VERIFICATION

Brian T. Borders, under penalty of perjury, deposes and says:

I am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matter, I believe them to be true.

To the best of my knowledge, information, and belief formed after an inquiry reasonable under the circumstances, the presentation of these papers, or the contentions therein are not frivolous as defined in Subsection © of Section 130.1-1 of the Rules of the Chief Administrative Judge. (22NYCRR).

_____
BRIAN T. BORDERS

Sworn before me on this 3rd day of August, 20 17

_____
Notary Public

CATHERINE MCCULLE
NOTARY PUBLIC-STATE OF NEW YORK
No. 02MC6344771
Qualified in Erie County
My Commission Expires 07-11-2020