UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRIAN T. BORDERS,

                                     Plaintiff,

                                                                               Case # 17-CV-1159-FPG

v.

                                                                                DECISION AND ORDER

GOODYEAR DUNLOP, NA., SUMITOMO RUBBER,

                                     Defendant.
_____

## INTRODUCTION

Plaintiff Brian T. Borders ("Plaintiff" or "Borders") brings this action for disability discrimination under the Family Medical Leave Act ("FMLA") and the New York State Human Rights Law ("NYSHRL"). Specifically, Plaintiff claims (1) interference with FMLA rights; (2) unlawful discrimination based on disability in violation of the NYSHRL; and (3) unlawful failure to accommodate in violation of the NYSHRL.[1] ECF No 1-2 at 7-11. Defendant, Sumitomo Rubber, USA, LLC ("Sumitomo" or "Defendant")[2] moves for summary judgment which Plaintiff opposes. ECF No. 22. For the reasons that follow, Defendant's motion is GRANTED IN PART and DENIED IN PART.

---

[1] Plaintiff raises, for the first time, an unspecified claim of "unlawful retaliation" in his response to Defendant's motion for summary judgment. ECF No. 29 at 16-22. No such claim for retaliation is made in the Complaint. ECF No. 1-2. The Court therefore does not consider this claim. *Mosby v. Bd. of Educ. City of Norwalk*, 754 F. App'x 34, 37 (2d Cir. 2018) ("[T]o the extent that Mosby seeks to pursue retaliation claims that were not part of his original complaint . . . the district court properly refused to entertain such arguments because . . . . Mosby first raised these new claims in his opposition to the Board's motion for summary judgment.") (summary order); *Strohl v. Brite Adventure Ctr., Inc.*, No. 08 CV 259(RML), 2009 WL 2824585, at *6 n.1 (E.D.N.Y. Aug. 28, 2009) ("Arguments first raised in reply memoranda are not properly considered . . . ." (internal citations and quotations omitted)).

[2] In its motion papers, Defendant asserts that it was "incorrectly named in the case caption as Goodyear Dunlop, N.A., Sumitomo Rubber" and refers to itself as "Sumitomo Rubber, USA, LLC." ECF No. 22 at 1.

1

## BACKGROUND[3]

Plaintiff is a cancer survivor and U.S. Army veteran who was honorably discharged with a disability rating of 80%—50% attributable to his migraine headaches and 30% attributable to his cancer-related issues. ECF No. 1-2 ¶ 11. Plaintiff worked as a UNIX Systems Administrator for Systems Personnel, a recruitment and staffing agency. In April 2007, he was contracted to work at Sumitomo. *Id.* ¶ 13; ECF No. 29-2 ¶¶ 5, 11. Sumitomo was made aware of Plaintiff's medical issues during his interview prior to contracting him. ECF No. 1-2 ¶ 13.

Plaintiff's supervisor at Sumitomo from 2007 to 2013 allowed Plaintiff flex time and overtime to accommodate his migraines. ECF No. 1-2 ¶ 14. When Kirk Rawls, a new supervisor, took over in November 2013, the flex and overtime accommodations ended. *Id.* ¶¶ 15, 16. No longer allowed such accommodations, Plaintiff began to have work performance and attendance issues due to his migraines. ECF No. 29-2 ¶¶ 17-19. When he spoke with Linda Walleshauer, Sumitomo's Human Resources ("HR") contact, about requesting FMLA leave, he was told "it was not necessary to file for FMLA." ECF No. 1-2 ¶ 18.

Kirk Rawls noted Plaintiff's medical, work performance, and attendance issues in his mid-year reviews of Plaintiff. *Id.* ¶¶ 20, 21. Plaintiff alleges Kirk Rawls had an "attitude" toward him and held his disability against him. ECF No. 29-2 ¶ 38. Plaintiff acknowledged that many employees found it difficult to work with Kirk Rawls. *Id.* ¶ 39.

Shortly after his discussion with Linda Walleshauer, Plaintiff's contract was reduced from 40 to 32 hours per week, but Plaintiff was told he could work more hours depending on his availability and that he could adjust his schedule to account for his migraines. *Id.* ¶ 32. Even with

---

[3] The following facts are taken from the record and are construed in a light most favorable to Plaintiff. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) ("When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor.").

the reduced schedule, Plaintiff struggled to work the requisite hours. *Id.* ¶¶ 34, 37. Still, Sumitomo continued to renew Plaintiff's contract from 2014 through 2016. *Id.* ¶ 41.

Sumitomo decided to stop using contract workers to fill its IT positions in 2015, at which time Plaintiff applied for a full-time job with Sumitomo. *Id.* ¶¶ 6, 42; ECF No. 1-2 ¶ 30. Plaintiff cancelled the interview because Kirk Rawls allegedly made false accusations implicating Plaintiff in a computer system failure. ECF No. 1-2 ¶¶ 31-32; ECF No. 29-2 ¶ 42. Plaintiff's placement with Sumitomo ended on December 31, 2016 when Sumitomo did not renew its contract with Systems Personnel. ECF No. 29-2 ¶ 6.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys*, 426 F.3d at 553. However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## DISCUSSION

I. **Interference with FMLA Rights**[4]

   A. **Claim is Timely**

As a threshold matter, Defendant argues that Plaintiff's FMLA claim is untimely because it was brought outside the two-year statute of limitations and Plaintiff cannot avail himself of the three-year statute of limitations for willful FMLA violations. ECF No. 22-18 at 9-10; *see* 29 U.S.C. § 2617(c)(1)-(2).

Plaintiff alleges he requested FMLA leave from Sumitomo in August 2014. ECF No. 29 at 19. Plaintiff filed this action on August 3, 2017, after the expiration of the two-year statute of limitations. ECF No. 1-2 at 12. To establish a willful violation of the FMLA, and thus to avail himself of the three-year statute of limitations, Plaintiff must show that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FMLA]." *Lewis v. New York City Police Dep't*, 908 F. Supp. 2d 313, 325 (E.D.N.Y. 2012).

Defendant's only argument here is that Sumitomo cannot be found to have willfully violated the FMLA because it was not Plaintiff's primary employer. Because, as the Court finds below, there is a genuine dispute of fact as to whether Sumitomo is Plaintiff's primary employer, the Court permits Plaintiff's claim as timely under the applicable three-year statute of limitations.

   B. **Plaintiff has Established a *Prima Facie* Claim of FMLA Interference**

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). To survive summary judgment, a plaintiff need only make out a *prima facie* claim

---

[4] In Plaintiff's response to Defendant's motion for summary judgment, he only discusses the law with regard to interference with FMLA rights. ECF No. 29 at 18-19. Thus, the Court construes Plaintiff's claim for a "Violation of the Family Medical Leave Act" as one for interference with FMLA rights.

4

of interference by putting forth evidence that (1) he is an eligible employee under the FMLA; (2) the defendant is an employer as defined by the FMLA; (3) the plaintiff was entitled to take FMLA leave; (4) he gave notice to the defendant of his intention to take leave; and (5) he was denied benefits to which he was entitled under the FMLA. *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424-26 (2d Cir. 2016) (setting out elements of FMLA interference claim and denying defendant's motion for summary judgment upon plaintiff's provision of evidence under each element).

The parties do not dispute that Plaintiff was an employee for purposes of the FMLA. However, because there is a genuine dispute of material facts as to whether Sumitomo or Systems Personnel was Plaintiff's primary employer, whether Plaintiff was entitled to FMLA leave, whether Plaintiff gave sufficient notice of his intention to take leave, and whether Plaintiff was denied FMLA benefits, Defendant's motion for summary judgment is DENIED with respect to Plaintiff's FMLA interference claim.

### 1. Genuine Dispute over Whether Sumitomo was Plaintiff's Primary Employer

Plaintiff argues that Sumitomo interfered with his FMLA rights when Linda Walleshauer, Sumitomo's HR representative, "refused to allow [him] to fill out the paperwork for that program" because Sumitomo already knew that he had a disability. ECF No. 29-4 at 29, 31. Plaintiff asserts that his discussion with Linda Walleshauer was sufficient to put Sumitomo on notice of his desire to exercise his FMLA rights or to prompt Sumitomo to notify Plaintiff that he should discuss taking FMLA leave with Systems Personnel. ECF No. 29 at 19. Sumitomo claims to have no record of Plaintiff's conversation with Linda Walleshauer. ECF No. 31 ¶ 12.

For purposes of its summary judgment motion Sumitomo concedes that it jointly employed Plaintiff with Systems Personnel. ECF No. 22-18 at 11 n.1. Sumitomo argues, however, that it

5

was not Plaintiff's *primary* employer and that "'only the primary employer is responsible for giving required notices to its employees, providing FMLA leave, and maintenance of health benefits.'" ECF No. 22-18 at 11 (quoting 29 C.F.R. § 825.106(c)).[5]

"Factors considered in determining which is the primary employer include authority/responsibility to hire and fire, assign/place the employee, make payroll, and provide employment benefits." 29 C.F.R. § 825.106(c). Moreover, "the placement agency most commonly would be the primary employer." *Id.* The ability to hire and fire an employee is most significant in this inquiry, and the primary employer is the entity by which Plaintiff remains employed even if fired from the other. *See Boyed v. Dana Inc.*, No. 3:16CV2609, 2017 WL 1179058, at *2 (N.D. Ohio, Mar. 30, 2017).

Here, Sumitomo seemingly retained the authority to hire and fire Plaintiff, as Plaintiff repeatedly cited Kirk Rawls's threats of termination as creating the impression that Plaintiff's disability was being held against him. ECF No. 22-1 at 7; ECF No. 22-4 at 21, 40, 41, 59, 95. Furthermore, it is not clear that Plaintiff was able to remain employed by Systems Personnel once his contract with Sumitomo ended, and thus it is unclear whether Systems Personnel alone or Sumitomo alone had the power to terminate Plaintiff's employment. ECF No. 22-4 at 22, 47, 53.

Plaintiff was clearly on Systems Personnel's payroll. ECF No. 22-4 at 10; ECF No. 2-5 at 9; ECF No. 22-6 at 12. However, there is a question as to whether authority to assign and place Plaintiff remained with Systems Personnel or Sumitomo—Systems Personnel worked with Sumitomo to find an employee to meet Sumitomo's job description, but if Sumitomo wanted another employee placed in Plaintiff's position, it could have made that request of Systems

---

[5] The Court notes that even assuming *arguendo* that Sumitomo is Plaintiff's secondary employer, "the secondary employer (client employer) must observe FMLA's prohibitions in § 105(a)(1), including the prohibition against interfering with, restraining, or denying the exercise of or attempt to exercise any rights provided under the FMLA." *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013).

6

Personnel. ECF No. 22-4 at 22; ECF No. 22-6 at 9. It is also not clear that Systems Personnel could unilaterally assign Plaintiff to another employer. *See Boyed*, 2017 WL 1179058, at *3 (noting that "the determinative fact was that the temp agency had the sole ability to assign [plaintiff] to another employer." (internal quotation and citation omitted)).

It does not surprise the Court that Plaintiff was confused about how to request FMLA leave benefits as there appears to be confusion among Sumitomo and Systems Personnel as to which entity was responsible for providing FMLA benefits. Lynn Baranyi, Systems Personnel's recruiter with whom Plaintiff was in contact, testified she "would assume" that Systems Personnel employees would notify Systems Personnel of a need for FMLA leave, but she did not know the process they should follow. ECF No. 22-5 at 13-14. Systems Personnel's president, James Cipriani, had "no idea" what the process was for an employee requesting FMLA leave. ECF No. 22-6 at 18. Linda Walleshauer's failure to direct Plaintiff otherwise when informing him he did not need to fill out FMLA paperwork would reasonably have indicated to Plaintiff that Sumitomo had authority to approve FMLA leave. Only Jeff Jensen, Sumitomo's Systems Development Manager, whose authority on the subject of FMLA leave is unclear,[6] claimed to have been approached by Plaintiff regarding FMLA leave and told Plaintiff he needed to bring his request to Systems Personnel. ECF No. 22-16 at 3. Plaintiff denies that Jeff Jensen ever informed him of any FMLA leave procedures. *See* ECF No. 29-2 ¶ 22.

Consequently, there is a genuine dispute as to whether Sumitomo was Plaintiff's primary employer for purposes of FMLA.

---

[6] Jeff Jensen said in his declaration that he had "access to records pertaining to individuals working in the IT area" and it is noted that Jensen was a "co-worker" of Plaintiff's. ECF No. 22-1 at 6; ECF No. 22-16 at 1. Plaintiff referred to him as the "manager of the software side of the group" at Sumitomo and said he was present at a meeting Plaintiff attended regarding the end of his contract. ECF No. 22-4 at 24-25.

7

### 2. Genuine Dispute as to Whether Plaintiff was Entitled to FMLA Rights

Defendant argues that Plaintiff did not have a serious health condition because he stopped receiving treatment for his migraines in or around 2012. ECF No. 31 at 5. Plaintiff argues that Sumitomo knew of his ongoing migraine disability since it hired him in 2007, and that he did continue to receive treatment. ECF No. 29 at 6; ECF No. 29-2 ¶ 21.

"The FMLA gives eligible employees an 'entitlement' to twelve workweeks per year of unpaid leave [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (internal quotation and citation omitted); *see also Rivera v. Crowell & Moring L.L.P.*, No. 14-cv-2774 (KBF), 2016 WL 796843, at *9 (S.D.N.Y. Feb. 18, 2016). A "serious health condition" is defined, in relevant part, as a condition that involves "continuing treatment by a healthcare provider." 29 U.S.C. § 2611(11)(B). A "serious health condition involving continuing treatment" is further defined as including, *inter alia*, "chronic conditions" that continue over an extended period of time and cause episodic periods of incapacity that require visits at least twice a year for treatment by a healthcare provider. *See* 29 C.F.R. § 825.115. Moreover,

> "A regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) . . . . A regimen of continuing treatment that includes the taking of over-the-counter medications such as aspirin . . . and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave." 29 C.F.R. § 825.113(c). "Ordinarily, unless complications arise, the common cold, the flu, ear aches, upset stomach, minor ulcers, [and] *headaches other than migraine* . . . are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave." *Id.* § 825.113(d).

*Slade v. Alfred Univ.*, No. 11-CV-396, 2013 WL 6081710, at *14 (W.D.N.Y. Nov. 19, 2013) (emphasis added).

Plaintiff testified at his deposition that he was receiving regular treatment for his migraines while employed by Sumitomo at a VA hospital until the various medications he was prescribed stopped adequately treating his migraines. ECF No. 22-4 at 33. At one point, his doctors at the VA prescribed him oxycodone, which helped. *Id.* His doctors stopped prescribing the oxycodone around 2012, fearing that Plaintiff would become addicted. *Id.* at 33-34. Plaintiff turned to self-medication with two to four ounces of vodka and described feeling that his doctors were not "giving [him] much of a choice" because they would not prescribe oxycodone, the one medication of many tried that helped. *Id.* at 33, 37. Thereafter, Plaintiff saw his general practitioner, Dr. Heyden, and used Excedrin to treat his migraines, but when that did not work, he went to urgent care facilities to get a shot of Toradol. *Id.* at 37. While Plaintiff indicates that he did not see Dr. Heyden specifically for migraines, Plaintiff did ask Dr. Heyden for a prescription for oxycodone which Dr. Heyden declined to write. *Id.*

Moreover, Plaintiff made Sumitomo aware that he was discharged from the Army and rated 50% disabled due to his migraines. ECF No. 1-2 ¶¶ 11, 13. According to Plaintiff's supervisor Kirk Rawls's declaration, he was aware that Plaintiff was often absent from work due to his migraines. ECF No. 22-14 at 2.

Plaintiff's apparent diagnosis with migraines and Sumitomo's ongoing awareness of them coupled with Plaintiff's sincere attempts to continue treating his migraines with doctor visits, medication, and urgent care visits convinces the Court, construing the facts in a light most favorable to Plaintiff, that a genuine dispute of material fact exists as to whether Plaintiff received continuing treatment for his migraines within the parameters of FMLA. *See Slade*, 2013 WL 6081710, at *15 (concluding there was a triable issue of fact as to whether plaintiff's migraines were a serious health condition where medical records indicated she was diagnosed with

9

migraines, and employer was aware of absences for migraines); *Strohl*, 2009 WL 2824585, at *6 (finding migraine condition made plaintiff eligible for FMLA leave where she "made at least 50 doctor visits over the last 8 years due to [her] condition and ha[s] had more than 10 prescriptions for different medications" (internal quotation marks omitted)). *But see Wooddy v. Delta Air Lines*, No. 17-23808-Civ-SCOLA/TORRES, 2019 WL 659359, at *4-6 (S.D. Fla. Jan. 8, 2019) (finding plaintiff's migraines were not a serious health condition because, *inter alia*, his doctor did not treat him for or prescribe medication for his migraines).

### 3. Genuine Disputes as to Whether Plaintiff's Notice was Sufficient and Whether Plaintiff was Denied FMLA Benefits

Defendant argues that, while Plaintiff never approached HR about and was never approved for FMLA leave, he was also never denied time off. ECF No. 31 at 5. While Plaintiff acknowledges he was never denied time off, he argues that Defendant misdirected him by telling him he did not need to fill out FMLA paperwork as he then took absences from work that would have otherwise been covered which were held against him in evaluations, ultimately leading to his termination. ECF No. 29 at 17, 18; ECF No. 29-2 ¶ 24; ECF No. 29-4 at 30-31, 95-96.

"Misleading or incorrect information regarding an employee's entitlement to FMLA leave can . . . interfere with an employee's attempt to exercise his or her rights under the FMLA . . . ." *Ridgeway v. Royal Bank of Scotland Grp.*, No. 3:11-cv-976 (VLB), 2013 WL 1985016, at *18 (D. Conn. May 13, 2013) (collecting cases). Therefore, if an employer misleads or misinforms an employee "by either failing to inform her of the steps she needed to take to secure FMLA leave, or even misinforming her regarding her eligibility for FMLA leave," that may constitute interference with FMLA rights. *Dighello v. Thurston Foods, Inc.*, 307 F. Supp. 3d 5, 26 (D. Conn. 2018).

The parties dispute whether Plaintiff ever approached Linda Walleshauer about taking FMLA leave and whether she told Plaintiff that "it was not necessary to file for FMLA." ECF No. 1-2 ¶ 18; ECF No. 29-4 at 29; ECF No. 29-2 ¶ 22; ECF No. 31 at 4.

Here, Plaintiff alleges he had a conversation with Sumitomo's HR representative regarding taking FMLA leave due to his migraines and that she told him he did not need to fill out FMLA paperwork because Sumitomo already knew he had a disability. ECF No. 29-4 at 31. Linda Walleshauer was not deposed and did not provide a declaration. Defendant has not provided evidence sufficient to rebut Plaintiff's deposition testimony that this conversation took place. Construing the facts in a light most favorable to Plaintiff, there is a question of fact as to whether Plaintiff put Defendant on notice of his desire to take FMLA leave and whether Defendant misled or misinformed Plaintiff with respect to his rights under the FMLA.

At the very least, the parties' demonstrated confusion over whether Sumitomo or Systems Personnel was responsible for providing FMLA benefits creates a dispute of fact as to whether Plaintiff was provided adequate notice of his FMLA rights in the first place. *See Dighello*, 307 F. Supp. 3d at 25 ("[A]lthough [f]ailure to notify an employee of FMLA procedures does not, in and of itself, constitute an interference with the exercise of those rights, such failure to notify may constitute interference with an employee's FMLA rights, if the lack of notice caused the employee to forfeit FMLA leave" (internal quotation omitted)); *see also Ridgeway*, 2013 WL 1985016, at *18.

Construing the facts in a light most favorable to the non-moving party, there is a dispute of fact as to whether Sumitomo interfered with Plaintiff's FMLA rights by misinforming him about his eligibility for FMLA leave. Accordingly, Defendant's motion for summary judgment is DENIED with respect to Plaintiff's claim for interference with FMLA rights.

## II. Plaintiff's Failure to Establish a *Prima Facie* Claim of Unlawful Discrimination under the NYSHRL

"[S]ummary judgment motions under the NYSHRL are analyzed under the same *McDonnell Douglas* burden-shifting framework as ADA claims." *Baron v. Advanced Asset and Prop. Mgmt. Solutions, LLC*, 15 F. Supp. 3d 274, 281 (E.D.N.Y. 2014); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a Plaintiff must establish a *prima facie* claim of discrimination. To do so under the NYSHRL, a plaintiff must show that (1) his employer was subject to the NYSHRL; (2) he was disabled within the meaning of the NYSHRL; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *Roberts v. Ground Handling, Inc.*, 499 F. Supp. 2d 340, 357 (S.D.N.Y. 2007).

Thereafter, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *See Benson v. Family Dollar Operations, Inc.*, 755 F. App'x 52, 56 (2d Cir. 2018) (summary order). If the defendant satisfies this burden, the plaintiff must present evidence that the articulated reason was a pretext for discrimination. *Id.*

Plaintiff has not established that he was qualified to perform the essential functions of his job *with or without reasonable accommodation*. Defendant argues that Plaintiff's repeated absences from work made him unable to perform the essential functions of his job. ECF No. 22-18 at 13-16. Indeed, "courts have specifically noted that [t]he ADA does not require employers to tolerate chronic absenteeism even when attendance problems are caused by an employee's disability." *Lewis*, 908 F. Supp. 2d at 327 (collecting cases) (internal quotation marks omitted).

Plaintiff's sole argument in oppositon is that Plaintiff had a "good work record" prior to Kirk Rawls's alleged withdrawal of his flex and overtime accommodations and that Plaintiff's noted issues with attendance and job performance thereafter failed to account for his migraines'

effect on his ability to do his job. ECF No. 29 at 14. Plaintiff fails to establish that he was otherwise qualified to perform his job even without reasonable accommodations, particularly when Plaintiff admitted that "[e]ven with a reduced schedule, [he] struggled to work the expected 32 hours" and that "[i]n 15 of the 64 weeks spanning from August 2014 to October 2015, [he] worked less than 28 hours . . . ." ECF No. 29-2 ¶ 34. A plaintiff's "'persistent absence from work, alone, precludes him from being considered qualified under the ADA' even assuming that plaintiff's absences were a result of a recognized disability.'" *Rinaldi v. Quality King Distributors, Inc.*, 29 F. Supp. 3d 218, 227 (E.D.N.Y. 2014) (quoting *Pierce v. Highland Falls-Montgomery Cent. Sch. Dist.*, No. 08-civ-1948 (RKE), 2011 WL 4526520, at *5 (S.D.N.Y. Sept. 28, 2011)).

Plaintiff cannot make out a *prima facie* claim of disability discrimination under the NYSHRL. Accordingly, Defendant's motion for summary judgment with respect to Plaintiff's NYSHRL discrimination claim is GRANTED.

### III. Plaintiff's Failure to Establish a *Prima Facie* Claim of Failure to Accommodate under the NYSHRL

Claims for failure to accommodate under the NYSHRL are also governed by the *McDonnell Douglas* burden-shifting analysis. *Berger v. New York City Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018). To make out a *prima facie* claim of failure to accommodate, Plaintiff must establish that "'(1) he is a person with a disability under the meaning of the ADA [or the NYSHRL]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Id.* (quoting *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015)) (alteration in original).

Defendant argues that the overtime and flex time accommodations Plaintiff proposed were either illegal or unreasonable such that Defendant had no obligation to provide those exact

13

accommodations, and that the reduced hours commitment Defendant did provide was sufficient to meet its obligations under the NYSHRL. ECF No. 22-18 at 16-19. Plaintiff asserts that the flex time, overtime, and work-from-home accommodations Plaintiff proposed were reasonable given that they had been approved in the past. *Id.*

"The reasonableness of an employer's accommodation is a 'fact-specific' question that often must be resolved by a factfinder." *Noll*, 787 F.3d at 94. However, where, as here,

> the employer has already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is "plainly reasonable." *Id.* In other words, the plain reasonableness of the existing accommodation ends the analysis. There is no need to engage in further burden-shifting to consider whether the employee's requested accommodation would have been reasonable.

*Id.*

Plaintiff admitted that he was given a reduced schedule as an accommodation for his migraines as a result of a discussion he had with Linda Wallehauser and Kirk Rawls. ECF No. 22-4 at 28-29; ECF No. 29-2 ¶ 32. Plaintiff struggled to work the requisite hours under this reduced-hours commitment, and continued to do so even when he voluntarily returned to a forty-hour work week commitment. ECF No. 22-4 at 64; ECF No. 29-2 ¶¶ 32, 37. Though Plaintiff claims to have agreed "reluctantly" to return to increased hours (ECF No. 29-2 ¶ 36), he nonetheless agreed, testifying "Why wouldn't I? I was there for the company, for their needs and whatever they wanted." ECF No. 22-4 at 64.

Courts have found reduced schedules to be plainly reasonable accommodations. *Rinaldi*, 29 F. Supp. 3d at 228 ("For an employee whose primary difficulty was itself being at work, time off and reduced hours were logical, reasonable accommodations."). While Plaintiff asserts there were other accommodations he had previously been given that could have been reinstated, there is "no liability for an employer's failure to explore alternative accommodations when the

accommodations provided to the employee were plainly reasonable." *See Noll*, 787 F.3d at 98 (discussing reasonable accommodations in context of ADA claims).

Plaintiff has not established a *prima facie* failure to accommodate claim because he has not shown that Defendant refused him a reasonable accommodation. Accordingly, Defendant's motion for summary judgment with respect to Plaintiff's NYSHRL failure to accommodate claim is GRANTED.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment (ECF No. 22) is GRANTED IN PART and DENIED IN PART. Only Plaintiff's claim for interference with FMLA rights survives summary judgment.

IT IS SO ORDERED.

Dated: January 13, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court